# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 18, 2012        Decided March 1, 2013

No. 11-5328

MUWEKMA OHLONE TRIBE,
APPELLANT

v.

KENNETH LEE SALAZAR, SECRETARY OF THE INTERIOR, AND
KEVIN K. WASHBURN, ASSISTANT SECRETARY
FOR INDIAN AFFAIRS,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-01231)

*Colin Cloud Hampson* argued the cause for appellant. *Harry R. Sachse* and *William F. Stephens* were on brief.

*Maggie B. Smith*, Attorney, United States Department of Justice, argued the cause for appellees. *Robert P. Stockman*, Attorney, was on brief.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Muwekma Ohlone Tribe (Muwekma) petitions this court to order the Secretary of the United States Department of the Interior and the Assistant Secretary for Indian Affairs (collectively Interior) to recognize it as an Indian tribe. Muwekma filed a "petition for acknowledgement" with Interior in 1995, which Interior denied in 2002. Muwekma challenged the denial in district court and, after Interior provided further explanation on remand, the district court granted Interior's cross-motion for summary judgment and denied Muwekma's summary judgment motion. *Muwekma Ohlone Tribe v. Salazar*, 813 F. Supp. 2d 170 (D.D.C. 2011) (*Muwekma 2011*). For the reasons set forth below, we affirm the district court.

## I.

Federal recognition is a prerequisite to the receipt of various services and benefits available only to Indian tribes. 25 C.F.R. § 83.2. During much of our nation's history, the Congress recognized Indian tribes by treaty. *See Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 57 (2d Cir. 1994). In 1871, this practice ended and tribal recognition occurred through executive orders and legislation. Roberto Iraola, *The Administrative Tribal Recognition Process and the Courts*, 38 AKRON L. REV. 867, 871 (2005).

After the passage of the Indian Reorganization Act of 1934, Pub. L. No. 73-383, 48 Stat. 984 (codified as amended at 25 U.S.C. §§ 461 *et seq.*), "recognition proceedings were necessary because the benefits created by it were made available only to descendants of 'recognized' Indian tribes." *Golden Hill*, 39 F.3d at 57. In 1934, Interior began conducting proceedings to determine if a tribe should be recognized. *Id.* From 1934 to 1978, Interior made recognition determinations on an *ad hoc* basis. *Id.*

In 1978, pursuant to broad authority delegated by the Congress,[1] Interior promulgated regulations establishing a formal recognition procedure (Part 83 process). *Id.* (citing 25 C.F.R. §§ 83.1-83.13). The Part 83 process is "intended to apply to groups that can establish a substantially continuous tribal existence and which have functioned as autonomous entities throughout history until the present." 25 C.F.R. § 83.3(a). It is available to groups that are not "already acknowledged" or "receiving services from the Bureau of Indian Affairs" (BIA). *Id.* § 83.3(b).

To be recognized under the Part 83 process, the petitioning group "must satisfy" seven criteria by submitting "thorough explanations and supporting documentation." *Id.* § 83.6(c). Specifically, it must:

> (a) Establish that it "has been identified as an American Indian entity on a substantially continuous basis since 1900." Identification must be shown "by other than the petitioner itself or its members."

> (b) Establish that "[a] predominant portion" of its members "comprises a distinct community" that has existed "from historical times until the present."

> (c) Establish that it "has maintained political influence or authority over its members as an

---

[1] *See Miami Nation of Indians of Ind., Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 345 (7th Cir. 2001), *cert. denied*, 534 U.S. 1129 (2002) ("Congress has delegated to the executive branch the power of recognition of Indian tribes without setting forth any criteria to guide the exercise of that power.") (citing 25 U.S.C. §§ 2, 9).

autonomous entity from historical times until the present."

(d) Provide either a copy of its current governing document, including membership criteria, or a description of its governing procedures and membership criteria in lieu of a document.

(e) Establish that its "membership consists of individuals who descend from a historical Indian tribe or from historical Indian tribes which combined and functioned as a single autonomous political entity."

(f) Establish that its "membership . . . is composed principally of persons who are not members of any acknowledged North American Indian tribe."

(g) Establish that "[n]either the petitioner nor its members are the subject of congressional legislation that has expressly terminated or forbidden the Federal relationship."

*Id.* § 83.7(a)-(g). The group must show that "available evidence establishes a reasonable likelihood of the validity of the facts relating to [each] criterion" but conclusive proof is not required. *Id.* § 83.6(d). Interior must "take into account historical situations and time periods for which evidence is demonstrably limited or not available." *Id.* § 83.6(e).

Section 83.8(d) relaxes section 83.7's first three criteria for a group that was once recognized. Specifically, a previously recognized group need establish only the following to satisfy section 83.7(a)-(c): (1) it has been identified "since the point of last Federal acknowledgement . . . . by such

sources as the same tribal entity that was previously acknowledged or as a portion that has evolved from that entity"; (2) "it comprises a distinct community at present"; and (3) "political influence or authority is exercised within the group at present." *Id.* § 83.8(d)(1)-(3). Alternatively, if the group cannot satisfy paragraphs (d)(1) and (d)(3), it "may demonstrate alternatively that it meets the requirements of the criteria in § 83.7(a) through (c) from last Federal acknowledgement until the present." *Id.* § 83.8(d)(5). Not every group must go through the Part 83 process to be recognized, however; Interior may waive the Part 83 process if waiver is, in Interior's view, "in the best interest of the Indians." *Id.* § 1.2.

After Interior receives a petition, its Office of Federal Acknowledgement (OFA) evaluates it and prepares a summary for the Assistant Secretary for Indian Affairs (Assistant Secretary), who issues a "proposed finding." *Id.* § 83.10(h). The group may respond, submit additional documentation and request an on-the-record meeting with the Assistant Secretary. *Id.* § 83.10(i)-(k). After review, the Assistant Secretary issues a "final determination" that either recognizes the group as a tribe or denies the petition. *Id.* § 83.10(*l*)(2). The group may then request reconsideration with the Interior Board of Indian Appeals. *See id.* § 83.11(a)(1). If it does not file the request within ninety days after the Final Determination is published in the Federal Register, "the Assistant Secretary's decision shall be final for [Interior]." *Id.* § 83.11(a)(2).

Muwekma is a group of American Indians from the San Francisco Bay area. Its members descended from a previously-recognized tribe called the Verona Band. Both parties agree that the Verona Band was previously recognized by the federal government between 1914 and 1927. Muwekma asserts that nine members of the Verona Band

were still alive and part of the Muwekma community in 1989 and one remains alive today. Yet there is no evidence that the Verona Band or Muwekma remained federally recognized after 1927. Muwekma acknowledges that "sometime after 1927 [Interior] ceased recognizing the Tribe for some purposes and substantially reduced the benefits, services and protection provided to the Tribe." Compl. ¶ 2. Moreover, Muwekma has never appeared on the list of federally-recognized tribes that Interior began publishing approximately every three years beginning in 1979 and now publishes annually. *See, e.g.*, *Indian Tribal Entities That Have a Government-to-Government Relationship with the United States*, 44 Fed. Reg. 7235 (Feb. 6, 1979); 25 U.S.C. § 479a-1.

In 1989, Muwekma submitted to Interior a letter of intent to petition to become a recognized Indian tribe.[2] Interior directed Muwekma to submit a petition under the Part 83 process, which Muwekma filed in 1995. After a preliminary review, Interior concluded that, because the Verona Band had previously been recognized and Muwekma directly descended from the Verona Band, it would evaluate Muwekma's petition under the relaxed section 83.8 criteria for a previously recognized tribe. In 1998, Interior placed Muwekma's petition on the list of petitions ready for consideration.

One year later, Muwekma brought an action in district court under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, to compel Interior to complete its review within one year. *See Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 31 (D.D.C. 2000). The court granted partial summary judgment in favor of Muwekma, ordering Interior to "submit to the court by July 28, 2000 a proposed schedule for

---

[2] Muwekma concedes that in 1989 it was not receiving federal benefits available to a recognized tribe.

resolving [Muwekma's] petition." *Id.* at 41-42. After Interior submitted a proposed schedule, which schedule did not include a date by which it intended to decide Muwekma's petition, the court ordered Interior to, *inter alia*, act on the petition by March 11, 2002. *Muwekma Tribe v. Norton*, 206 F. Supp. 2d 1, 2 (D.D.C. 2002). On July 30, 2001, Interior issued a proposed finding rejecting Muwekma's recognition petition. In response, Muwekma submitted comments and additional evidence. On September 6, 2002 (after receiving several deadline extensions from the district court), Interior issued a 184-page Final Determination, adopting the conclusions of the proposed finding and providing additional analysis.

The Final Determination found that Muwekma failed to satisfy the three criteria set forth in section 83.7(a) through (c), as modified by section 83.8. According to Interior, Muwekma failed to satisfy criterion (a)—that it has been identified as an American Indian entity on a substantially continuous basis since 1927—because "the petitioning group was not identified as an Indian entity for a period of almost four decades after 1927, and for only a 6-year period during the 55 years between 1927 and 1982."[3] Joint Appendix (JA) 1506. It failed to satisfy criterion (b)—that it comprises a distinct community at present—because, while it showed some evidence of a distinct community existing as late as 1950, it failed to submit "documents or oral histories dealing with the present day." JA 1560. It failed to satisfy criterion (c)—that it exercises political authority over members from

---

[3] Interior concluded that Muwekma submitted sufficient evidence to be "identified as an Indian entity" from 1965 through 1971 because "Rupert and Jeannette Henry Costo of the [American Indian Health Services] identified a contemporary Ohlone group between 1965 and 1971." JA 1502.

its last recognition to the present—because, *inter alia*, "[s]ince 1990, participation in [Muwekma's] activities has been mostly by a core group of 20 individuals" and "[a] predominant portion of [its] membership has not participated in the group's activities." JA 1600.

On June 6, 2003, Muwekma filed a second action in district court, challenging Interior's determination. Muwekma brought six causes of action, claiming that Interior's Final Determination (1) "unlawfully withdrew . . . recognition" of Muwekma; (2) violated Muwekma's right to equal protection; (3) violated Muwekma's right to due process; (4) was "arbitrary and capricious as a result of bias"; (5) was produced by conflicted Interior Staff in violation of 5 U.S.C. § 554(d); and (6) "was arbitrary and capricious because of failure to apply the standards required by the department's regulations, misinterpretation of law, and failure to follow well-established department precedent established in other recognition cases." Compl. ¶¶ 34-47.

Muwekma's principal claim was that Interior denied Muwekma equal protection by requiring Muwekma to proceed under the Part 83 process despite summarily recognizing two other Indian tribes—the Ione Band of Miwok (Ione) and the Lower Lake Rancheria of California (Lower Lake)—outside the Part 83 process. *See Muwekma Ohlone Tribe v. Kempthorne*, 452 F. Supp. 2d 105, 110-11 (D.D.C. 2006). Muwekma contended that it, like the Ione and Lower Lake tribes, was previously recognized and therefore entitled to the same summary approval granted to the latter two tribes. After both parties moved for summary judgment, the district court explained that it was "unable to discern [Interior's] rationale for requiring Muwekma to proceed through the Part 83 tribal acknowledgment procedures while allowing other tribes that appear to be similarly situated to bypass the procedures altogether." *Id.* at 125. Accordingly, it remanded

the case to Interior to supplement the record with a "detailed explanation of the reasons for its refusal to waive the Part 83 procedures." *Id.* at 124.

On November 27, 2006, Interior filed a Supplemental Explanation with the district court. Interior explained that its decisions to summarily recognize Ione and Lower Lake "were not based merely on a finding that those groups were previously recognized by the Federal Government at some time in the past." JA 106. Rather, unlike Muwekma, both Ione and Lower Lake had government-to-government interactions with the federal government decades after 1927. For example, the government held land in trust for Lower Lake until 1956, having surveyed Lower Lake's population in 1950 and consulted with Indians living on the land about selling it in 1953. Additionally, in 1980, Interior considered including Lower Lake on the list of federally-recognized tribes. Regarding the Ione tribe, in 1941, the government considered Ione's petition for the purchase of land; in 1970, two Ione members asked Interior about the status of their tribal land; and in 1972, California Indian Legal Services successfully brought a quiet title action on behalf of Ione which caused Interior to issue a letter "accept[ing] by relinquishment of title or gift [a] parcel of land to be held in trust for the Ione Band of Miwok Indians." JA 111-12, 524-25. By contrast, Interior explained, "there is no evidence of *any* Federal dealings with a Muwekma group or Verona band after 1927." JA 107 (emphasis added). As the district court summarized, "[u]nlike the evidence proffered by the Muwekma, which at best demonstrated interactions between the federal government and *individuals* that descended from the Verona Band, the evidence in the supplemental administrative record reflects dealings between the federal government and the Ione and

Lower Lake tribes as *entities*." *Muwekma 2011*, 813 F. Supp. 2d at 199 (emphasis in original).[4]

Both parties again moved for summary judgment. After a procedural dispute over whether the district court's earlier order constituted the law of the case on the "similarly situated" issue,[5] on September 28, 2011, the district court granted Interior's cross-motion for summary judgment. *Id.* at 199.

**II.**

We review a grant of summary judgment de novo. *Bush v. District of Columbia*, 595 F.3d 384, 387 (D.C. Cir. 2010).

---

[4] Interior also noted that Ione had pre-1927 dealings with the federal government involving the purchase of land. Interior explained that the government attempted to purchase land for Ione in the 1910s and 1920s and that, in 1927, an Interior Superintendent stated that he "had 'been considering the purchase of a tract for the Indians at Ione for the past several years.' " JA 111.

[5] On September 30, 2008, after the parties cross-moved for summary judgment, the district court criticized the Supplemental Explanation, stating that its earlier order had found that Muwekma was similarly situated to Ione and Lower Lake and that the finding arguably constituted the law of the case. The district court then stayed the motions for summary judgment and ordered the parties to brief whether the "similarly situated" finding was the law of the case and, if so, whether there was a compelling reason to depart from it. In subsequently granting summary judgment to Interior, the district court acknowledged that "[u]pon further reflection, the Court['s] September 30, 2008 Order incorrectly represented the ruling in its September 21, 2006 Memorandum Opinion. . . . [which] did not decide the question of whether the Muwekma was 'similarly situated' to the Lower Lake and Ione." *Muwekma 2011*, 813 F. Supp. 2d at 197.

Summary judgment is appropriate only when " 'there is no genuine issue as to any material fact.' " *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence, " 'viewed in a light most favorable to the nonmoving party,' " could support a reasonable jury's verdict for the non-moving party. *Id.* (quoting *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)).

Muwekma mounts several challenges to the district court's judgment which we discuss *seriatim*.

### A.  Equal Protection and APA Claims

Muwekma asserts that Interior denied it the equal protection guaranteed by the Fifth Amendment to the United States Constitution because Interior summarily recognized Lower Lake and Ione outside the Part 83 process but did not do the same for Muwekma. Muwekma's APA claim similarly alleges that Interior's failure to recognize Muwekma was arbitrary and capricious because it failed to follow Interior precedent established in other recognition cases.

To prevail on an equal protection claim, the plaintiff must show that the government has treated it differently from a similarly situated party and that the government's explanation for the differing treatment "does not satisfy the relevant level of scrutiny." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1102 (D.C. Cir. 2005). Here, the relevant level of scrutiny is rational basis because Interior's action does not target a suspect class or burden a fundamental right. *Tucker v. Branker*, 142 F.3d 1294, 1300 (D.C. Cir. 1998) ("A . . . classification that does not burden either a fundamental right or a suspect class must be reviewed under the rational basis test."); *see also Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279 (9th Cir. 2004), *cert. denied*, 545 U.S. 1114 (2005) ("[T]he

recognition of Indian tribes remains a political, rather than racial determination. Recognition of political entities, unlike classifications made on the basis of race or national origin[,] are not subject to heightened scrutiny. Consequently, we apply rational basis review . . . ."). We apply a similar analysis under the APA. Agency action is arbitrary and capricious if "the agency offers insufficient reasons for treating similar situations differently." *Cnty. of Los Angeles v. Shalala,* 192 F.3d 1005, 1022 (D.C. Cir. 1999) (quotation marks and brackets omitted). "If [an] agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases." *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007). Because Muwekma is not similarly situated to Lower Lake and Ione, its constitutional and APA claims fail.

Muwekma asserts that, "[l]ike Lower Lake [and] Ione . . . , Muwekma (1) was federally recognized during the 20th century . . . ; (2) was never terminated by any Act of Congress or court order; (3) for some unknown reason was forgotten and mistakenly left off of the BIA's list of recognized tribes; and (4) continued to exist and to seek reaffirmation." Br. of Appellant 36. As Interior's twenty-one-page Supplemental Explanation makes clear, however, the Lower Lake and Ione tribes, unlike Muwekma, had multiple post-1927 government-to-government interactions with the United States. We agree with the district court's conclusion that Interior "viewed its interactions with the Ione and Lower Lake tribes as evidence that the federal government dealt with these entities *as tribes*." *Muwekma 2011*, 813 F. Supp. 2d at 199 (emphasis added).

Interior's emphasis on government-to-government interaction as a distinguishing characteristic is not arbitrary. Indeed, government-to-government interaction is a common

characteristic of a recognized tribe. *See, e.g.*, 25 C.F.R. § 83.1 (defining federal acknowledgement of tribe as "action by the Federal government . . . indicating clearly the recognition of a relationship between that entity and the United States"); *id.* § 83.2 (federally recognized tribes obtain immunities and privileges "by virtue of their government-to-government relationship with the United States"); *id.* § 83.7(c) (group seeking tribal recognition must have "maintained political influence or authority over its members as an autonomous entity"). Interior therefore exercised its broad authority properly by making exceptions for Ione and Lower Lake but not for Muwekma on this basis. *See* 25 C.F.R. § 1.2 (authorizing exception to Part 83 process "in all cases where permitted by law and the Secretary finds that such waiver or exception is in the best interest of the Indians").

Muwekma emphasizes that its members enrolled in the California Claims Act in the 1930s, 1950s and 1970s[6] and that Muwekma children attended BIA schools in the 1930s and 1940s. Like the district court, however, we believe that interaction between Muwekma *members* and the federal government does not equate to *tribal* interaction with the

---

[6] The California Claims Act, Pub. L. 70-423, 45 Stat. 602 (1928) (codified as amended at 25 U.S.C. §§ 651 *et seq.*) authorized the attorney general of California to bring suit in the federal court of claims on behalf of the "Indians of California," defined as "all Indians who were residing in the State of California on June 1, 1852, and their descendants now living in said State." *Id.* § 1, 45 Stat. at 602. The Act originally provided that "*[a]ny person* claiming to be entitled to enrollment may within two years after the approval of this Act, make an application in writing to the Secretary of the Interior for enrollment." *Id.* § 7, 45 Stat. at 603 (emphasis added). Section 7 was repeatedly amended to allow subsequent revisions to the roll of individually enrolled Indians. *See* 25 U.S.C. § 657.

federal government on a government-to-government basis. Muwekma points to its tribal community activities and social interaction, including its "formal constitution,"[7] the fact that ninety-nine percent of its members are descendants of the Verona Band and the fact that Verona Band members were involved in Muwekma activities into the 2000s. Muwekma points out several purported weaknesses in Ione's and Lower Lake's applications, including certain gaps in evidence, conflicting membership lists and genealogy and the fact that Ione did not have a formal constitution until after Interior reaffirmed it as a tribe in 1994. Yet none of these points addresses the key distinction between Muwekma and Ione and Lower Lake: government-to-government interactions.

Muwekma alternatively contends that we cannot consider Interior's Supplemental Explanation's explication of the differences between Muwekma on the one hand and Ione and Lower Lake on the other because it represents a *post hoc* rationale. It is true that "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). But it is entirely proper for an agency to provide an explanation if directed to do so on remand. *See, e.g.*, *Burlington Res. Inc. v. FERC*, 513 F.3d 242, 244 (D.C. Cir. 2008) (considering agency's explanation on remand for its differing treatment of natural gas producers).[8]

---

[7] While a formal constitution is evidence of at least one of the Part 83 criteria, *see* JA 1021 (referring to 25 C.F.R. § 83.7(d)), it is not dispositive of the recognition inquiry because a tribe must satisfy *all* seven Part 83 criteria. *See* 25 C.F.R. § 83.6(c), (d).

[8] Muwekma relies on our decision in *Food Marketing Institute v. ICC*, 587 F.2d 1285, 1290 (D.C. Cir. 1978), in which we declared that "[p]ost-hoc rationalizations by the agency on remand

In sum, we agree with the district court that Interior's Supplemental Explanation adequately explained why Muwekma is not similarly situated to Ione or Lower Lake and, accordingly, Muwekma's equal protection claim fails.[9]

---

are no more permissible than are such arguments when raised by appellate counsel during judicial review." But the statement does not mean that an agency cannot explain itself on remand. Rather, *Food Marketing Institute* simply explains that "we must recognize the danger that an agency, having reached a particular result, may become so committed to that result as to resist engaging in any genuine reconsideration of the issues" and that "[t]he agency's action on remand must be more than a barren exercise of supplying reasons to support a pre-ordained result." *Id.* Muwekma contends that Interior ran afoul of *Food Marketing Institute* because the reasons it gave in its Supplemental Explanation for distinguishing Ione and Lower Lake were not listed in the recognition letters sent to those tribes. The letters, however, did not purport to describe all of the factors Interior considered in reaching its decisions.

[9] Muwekma also refers to a 2012 press release issued by Interior in which it summarily reaffirmed the Tejon tribe after concluding that it had erroneously omitted Tejon from the list of recognized Indian tribes. Press Release, United States Dep't of the Interior, *Echo Hawk Issues Reaffirmation of the Tejon Indian Tribe's Government-to-Government Status* (Jan. 3, 2012), *available at* http://bia.gov/idc/groups/public/documents/text/idc015898.pdf. The press release on its face does not purport to explain Interior's reasoning regarding Tejon. On the other hand, a separate Interior memorandum explains that "[i]t was not necessary for the Tejon Indian Tribe to go through the Federal acknowledgement process . . . because its *government-to-government relationship* had neither lapsed nor been administratively terminated." Memorandum from Interior Assistant Secretary, Indian Affairs, to Regional Director, Pacific Region & Deputy Director, Office of Indian Services on Reaffirmation of Federal Recognition of Tejon Indian Tribe 1 (Apr.

### B. Termination of Recognition Claim

Muwekma next argues that, because it is the direct descendant of the Verona Band, Interior's finding that Muwekma is not an Indian tribe is the equivalent of terminating Muwekma's recognition. It argues that "only Congress has the authority to terminate a tribe's federal recognition." Br. of Appellant 21. The district court concluded that this claim is barred by the statute of limitations. We disagree that the claim is time-barred, but find that it fails on the merits.

28 U.S.C. § 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." A claim accrues when a party can "institute and maintain a suit in court" once it "has exhausted all administrative remedies whose exhaustion is a prerequisite to suit." *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56-57 (D.C. Cir. 1987). The court lacks subject matter jurisdiction to hear a claim barred by section 2401(a). *Id.* at 55.

In *James v. U.S. Department of Health & Human Services*, 824 F.2d 1132 (D.C. Cir. 1987), a faction of an unrecognized Indian group "took the position that the [group] . . . was already federally recognized" and "therefore did not file a petition for federal acknowledgement, but rather sought . . . a declaration ordering the Department of the Interior to add the [group] to the list of federally recognized tribes." *Id.* at 1136-37. We affirmed the district court's dismissal of the complaint for failure to exhaust administrative remedies, explaining that "[t]he purpose of the regulatory scheme set up

---

24, 2012), *available at* http://www.bia.gov/cs/groups/public/documents/text/idc-018480.pdf (emphasis added).

by the Secretary of the Interior is to determine which Indian groups exist as tribes[ and t]hat purpose would be frustrated if the Judicial Branch made initial determinations of whether groups have been recognized previously or whether conditions for recognition currently exist." *Id.* at 1137 (citation omitted). We further noted that dismissal served the primary purposes of exhaustion, to wit: "allowing the agency the opportunity in the first instance to apply its expertise . . . and correct its own errors," "aid[ing] judicial review" through factual development and "promot[ing] judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency." *Id.* at 1137-38.

The district court found that Muwekma's termination of recognition claim was distinct from a claim under the Part 83 process and therefore was not subject to administrative exhaustion. We disagree. In fact, the Part 83 process applies to a petition of a previously recognized tribe that seeks current recognition on that basis. *See* 25 C.F.R. § 83.8(a) ("Unambiguous previous Federal acknowledgment is acceptable evidence of the tribal character of a petitioner to the date of the last such previous acknowledgment."); *see also James*, 824 F.2d at 1138 ("The Department of the Interior's Branch of Acknowledgment and Research was established for determining whether groups seeking tribal recognition actually constitute Indian tribes and presumably to determine which tribes have previously obtained federal recognition"). The Part 83 process allowed Interior to engage in factfinding bearing on Muwekma's termination of recognition claim, provided Interior an opportunity to correct any error in not previously placing Muwekma's name on tribal recognition lists and potentially could have resolved this case without judicial involvement. Accordingly, we find that Muwekma's

termination of recognition claim was subject to administrative exhaustion and thus did not accrue until September 6, 2002 when Interior issued its Final Determination. Therefore, Muwekma's claim, asserted in its 2003 complaint, is not barred by the statute of limitations.

Nevertheless, Muwekma's termination claim fails on the merits because Interior did not terminate Muwekma's recognition. While Muwekma—like the Verona Band—may have previously been a recognized tribe, a once-recognized tribe can fade away. *Miami Nation of Indians of Ind., Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 346 (7th Cir. 2001) ("It is . . . obvious that Indian nations, like foreign nations, can disappear over time . . . whether through conquest, or voluntary absorption into a larger entity, or fission, or dissolution, or movement of population."), *cert. denied*, 534 U.S. 1129 (2002). Interior found that Muwekma had, in effect, faded away. There is no dispute that Muwekma was recognized in 1927 (as the Verona Band). But, when Muwekma contacted Interior in 1989 *via* the petitioning process, it was not on Interior's list of recognized Indian tribes nor was it receiving any services or benefits from the government. In addition, Interior concluded that Muwekma did not merit current recognition under the Part 83 process based on its failure to establish that it had exercised political authority over members, *see* 25 C.F.R. § 83.8(d)(3), and the fact that it had not been identified as an Indian tribe for an extended period of time, *see id.* § 83.8(d)(1), and did not "comprise[] a distinct community at present" (since 1984), *see id.* § 83.8(d)(2). Accordingly, Muwekma's termination of recognition claim fails.

## C.  *Due Process Claim*

Muwekma argues that "as a previously recognized tribe" it had a due process right to a "formal adjudicatory hearing in

any proceeding that could result in the loss of that recognition." Br. of Appellant 44. Muwekma also contends that Interior violated Muwekma's due process rights by improperly allowing Interior staff with a conflict of interest to evaluate its petition. Both arguments fail.

A "threshold requirement of a due process claim" is "that the government has interfered with a cognizable liberty or property interest." *Hettinga v. United States*, 677 F.3d 471, 479-80 (D.C. Cir. 2012) (per curiam), *cert. denied*, 133 S. Ct. 860 (2013). But, for the same reasons Muwekma's termination of recognition claim fails, whatever due process interest Muwekma might have had as a previously-recognized tribe disappeared because that previously-recognized tribe no longer exists. *See Miami Nation*, 255 F.3d at 346; *see also United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*, 638 F.3d 297, 300 (D.C. Cir. 2011) (individual no longer possesses due process right to challenge seizure of property that is "voluntarily forfeited"). Moreover, as discussed above, because Muwekma was not receiving any government services or benefits in 1989 when it began the petitioning process, Interior's Final Determination did not cut off government services or benefits. *Cf. Greene v. Babbitt*, 64 F.3d 1266, 1271-73 (9th Cir. 1995) (finding due process interest in tribal financial benefits that were cut off); *see also Lyng v. Payne*, 476 U.S. 926, 942 (1986) ("We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause . . . ."); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) (due process "is a safeguard of the security of interests that a person has *already acquired* in specific benefits") (emphasis added).

Muwekma also asserts that Interior violated the APA by allowing several Interior lawyers and staff who participated in defending Interior in litigation brought by Muwekma in 2000

and 2001 to participate in drafting Interior's 2002 Final Determination. Muwekma's argument is based on 5 U.S.C. § 554(d), providing that an agency employee who takes an adversarial role in one case "may not, in that or a factually related case, participate or advise in the [agency's] decision . . . except as witness or counsel in public proceedings." Section 554(d), however, applies only to an "adjudication required *by statute* to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a) (emphasis added). Muwekma's recognition petition did not trigger a statutorily-mandated hearing. Muwekma argues that " 'hearings necessitated by the Constitution are included in the scope of hearings that are covered by section 554 of the APA.' " Br. of Appellant 51 (quoting *Collord v. U.S. Dep't of Interior*, 154 F.3d 933, 936 (9th Cir. 1998)); *see also Wong Yang Sung v. McGrath*, 339 U.S. 33, 50-51 (1950). The Constitution, however, requires a hearing only if Muwekma can show deprivation of a property interest. *Collord*, 154 F.3d at 936 (finding hearing necessary because "[t]he Collords' mining and milling site claims are property interests"). Because we conclude that Muwekma has no cognizable property interest, its section 554(d) argument fails.

### D. Arbitrary and Capricious Claim

Finally, Muwekma argues that Interior's Final Determination was arbitrary and capricious for several reasons. We disagree.

The APA instructs the court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although the scope of review under the arbitrary and capricious standard is narrow and the court is not empowered to substitute its judgment for that of the agency, *Rural Cellular Ass'n v. FCC*,

588 F.3d 1095, 1105 (D.C. Cir. 2009), the agency must provide a " 'rational connection between the facts found and the choice made' " so as to afford the reviewing court the opportunity to evaluate the agency's decision-making process. *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). While "we have long held that agency determinations based upon highly complex and technical matters are entitled to great deference," *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 248 (D.C. Cir. 2003) (quotation marks and brackets omitted), "we do not defer to the agency's conclusory or unsupported suppositions." *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004).

### 1. *Decade-by-Decade and Conclusive Proof Tests*

Muwekma claims that Interior improperly required it to "meet a decade-by-decade test for continuity [under 25 C.F.R. §§ 83.7(a), 83.8(d)(1)] that is not found in the Part 83 regulations," Br. of Appellant 55, and also required that Muwekma provide "conclusive proof" rather than merely a "reasonable likelihood of the validity of the facts relating to [the Part 83 criteria]," 25 C.F.R. § 83.6(d). Yet nowhere in its Final Determination does Interior apply such tests. In fact, the Final Determination repeatedly refers to the "reasonable likelihood" standard. *See* JA 1476, 1492, 1495, 1501, 1503. Additionally, Interior does not claim that Muwekma's claim was rejected simply because Muwekma failed to establish continuity for each decade; rather, Interior found that Muwekma "was not identified as an Indian entity for a period of almost four decades after 1927, and for only a 6-year period during the 55 years between 1927 and 1982." JA 1506. While Muwekma cites to peripheral matters (including a former Interior assistant secretary's testimony at an unrelated hearing) that it contends casts doubt on which tests Interior in fact used, Muwekma has failed to overcome the presumption

of regularity, that is, that agencies follow their own regulations. *Friends of the Earth, Inc. v. EPA*, 446 F.3d 140, 148 (D.C. Cir. 2006); *La. Ass'n of Indep. Producers & Royalty Owners v. FERC*, 958 F.2d 1101, 1111 (D.C. Cir. 1992) (per curiam) ("The Coalition cannot, by sheer multiplication of innuendo, overcome the strong presumption of agency regularity.").

## 2. *Difficulties in Compiling Historical Evidence*

Muwekma also claims that Interior erred because it did not consider the difficulties "tribes may have in compiling comprehensive historical evidence" and did not consider Muwekma's pre-1927 evidence to close gaps in Muwekma's post-1927 evidence. Br. of Appellant 56; *see also* 25 C.F.R. § 83.6(e) (Interior "shall take into account historical situations and time periods for which evidence is demonstrably limited or not available"). But Muwekma fails to explain what pre-1927 evidence is relevant and how it would have explained post-1927 record deficiencies. It appears Muwekma's argument is that Interior should have considered the fact that California tribes suffered a "particularly horrible experience" and that Muwekma lacked a "landbase." *Muwekma 2011*, 813 F. Supp. 2d at 192 (quotation marks omitted). But as the district court found, Muwekma failed to explain how this history affected its ability to retain documentation of its existence after 1927. *Id.* at 194. Muwekma complains that "[i]n following this regulatory rule in a decision for another tribe, Interior accepted evidence about an influenza pandemic and the loss of the tribe's reservation, relying on those hardships (from the years 1918 to 1928) to excuse the tribe's 'administrative obscurity' in the later years 1940 until 1968." Br. of Appellant 56 (citing JA 599). But it is reasonable for Interior to relax evidentiary rules during the years following a pandemic inasmuch as the demographic trauma suffered by

the tribe during the pandemic likely inhibited evidence collection. Muwekma presents no comparable evidence.

### 3. Provision of Educational Services

Muwekma further asserts that Interior arbitrarily rejected the fact that Muwekma children attended BIA schools in the 1930s and 1940s as evidence of Muwekma's identification by an external source. *See* 25 C.F.R. § 83.7(a).[10] Interior explained, however, that it rejected this evidence because school admission did not require tribal membership. Muwekma argues that Interior's rejection of this evidence is inconsistent with its consideration of similar evidence submitted by the Cowlitz and the Ione tribes. Specifically, Interior determined that Cowlitz had not been absorbed into surrounding tribes because it received services from the federal government, including "attendance by Cowlitz children at BIA operated schools." Record of Decision for the Cowlitz Indian Tribe, *available at* http://www.bia.gov/idc/groups/mywcsp/documents/text/idc012719.pdf at 99 (Dec. 17, 2010). But Interior's Cowlitz decision relied in part on a BIA superintendent's letter to a BIA-operated school asking about the welfare of Cowlitz students who, he explained, were under his jurisdiction. *Id.* This fact, plainly probative of external identification, distinguishes Cowlitz from Muwekma.

With respect to Ione, Muwekma contends that "[w]hen Interior officials sought to determine in 1970 if Ione had ever been federally recognized, one of the first questions Interior

---

[10] 25 C.F.R. § 83.8(d), which modifies 25 C.F.R. § 83.7(a) for previously recognized tribes, requires, *inter alia*, that a group show it has been identified by an outside source "since the point of last Federal acknowledgement. . . . as the same tribal entity that was previously acknowledged or as a portion that has evolved from that entity."

asked was whether the BIA ever accepted Ione children in its schools." Muwekma cites a letter in which Interior asked Ione a number of different questions pertaining to federal recognition, including: "Has the Bureau of Indian Affairs extended services to them at any time, accepted their children in Bureau schools or supplied JOM payments[11] for them?" JA 532. The letter does not state that evidence of school attendance, without more, is probative. More importantly, the letter was written in 1973—years before Interior promulgated Part 83.

### 4. *California Claims Act*

Muwekma asserts that Interior erroneously rejected the fact that its members or their ancestors enrolled in the California Claims Act, *see supra* n.6, as evidence that Muwekma had been externally identified. We agree with the district court that this evidence does not constitute external identification of Muwekma. *Muwekma 2011*, 813 F. Supp. 2d at 192. Enrollment in the California Claims Act did not require tribal affiliation. Instead, it was available to "all Indians who were residing in the State of California on June 1, 1852, and their descendants now living in said State." 25 U.S.C. § 651. Muwekma claims that, as a matter of practice, tribal affiliation was required because applicants had to answer the following question: "What is your degree of Indian blood and to what Tribe or Band of Indians of the State

---

[11] "JOM payments" refers to the Johnson-O'Malley Act of 1934, Pub. L. No. 73-167, 48 Stat. 596 (codified as amended at 25 U.S.C. § 452-54), which authorizes the Interior Secretary to, *inter alia*, "enter into a contract or contracts . . . and to expend under such contract or contracts, moneys appropriated by Congress for the education, medical attention, agricultural assistance, and social welfare, including relief of distress, of Indians in [a] State or Territory." 25 U.S.C. § 452.

of California do you belong?" *See* JA 1478. But Interior reasonably interpreted this question to refer to tribal ancestry, not to contemporary membership. Interior's interpretation is bolstered by two approved applications that listed the tribe or band as "unknown." Interior reasoned that "an individual's active tribal membership would not be unknown to him or her, while his or her specific tribal ancestry back to 1852 could be unknown." JA 1478-79. We agree with the district court that Interior's explanation is not "wanting in logic." *Muwekma 2011*, 813 F. Supp. 2d at 192-93.

### 5. Survival of Verona Band Members

Muwekma argues that Interior erroneously failed to consider the fact that "in 1989 nine individuals who were from the Verona Band were still alive and very much a part of the Muwekma community" and that one of those individuals remains alive today. Br. of Appellant 58. Muwekma asserts, without citation, that "[t]his should be sufficient, without more, to support an inference of a continuing tribal community" necessary to satisfy section 83.7(b). *Id.* at 58-59. While it is true that Interior's Final Determination does not expressly treat this evidence, it does consider the connection between Verona Band and Muwekma and the activity of Verona Band members over time, which takes this evidence into account. In any event, this is not *ipso facto* evidence that Muwekma has satisfied section 83.7(b). *See Miami Nation*, 255 F.3d at 351 (explaining that tribe can cease to exist).[12]

---

[12] In fact, evidence that members of the Verona Band were alive in 1989 and participating in Muwekma activities relates more to the genealogical considerations of section 83.7(e) (requiring that "membership consists of individuals who descend from a historical Indian tribe . . . .") than to section 83.7(b)'s requirement that a predominant portion of Muwekma's members comprise and have comprised a distinct community.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Interior.

*So ordered.*