Concurring opinion filed by Circuit Judge BROWN.
PER CURIAM.
Plaintiff-Appellant Mackinac Tribe brought an action in federal district court to compel the Secretary of the Interior to convene an election allowing the Tribe to organize under the Indian Reorganization Act (IRA), 25 U.S.C. § 476(a). Although the Mackinac Tribe does not appear on the Secretary’s list of federally acknowledged tribes and has not been acknowledged through the Secretary’s Part 83 process, see 25 C.F.R. pt. 83, the group alleges it is federally recognized for IRA purposes because it is the historical successor to a tribe the federal government previously recognized via treaty. The district court reserved the question of whether acknowledgment through Part 83 is a necessary prerequisite for tribal organization under the IRA, finding instead that the Mackinac Tribe failed to exhaust its administrative remedies by first seeking acknowledgment through the Part 83 process. We agree and affirm the district court’s grant of summary judgment.
I
To appreciate the Mackinac’s claim, we must look far back into our Nation’s history. Between 1785 and 1855, the United States entered into numerous treaties with a group of Native Americans known as the Ottawa and Chippewa Nation. These people were located in Michigan and comprised several autonomous tribes linked by similar culture and shared language—of which the Mackinac were one. For ease of administrability, the government referred to and negotiated with these tribes collectively as the “Ottawa and Chippewa Nation of Indians.” See, e.g., Treaty with Ottawa and Chippewa, 7 Stat. 491 (Mar. 28, 1836). An 1836 treaty, however, singled out the Mackinac Tribe (then referred to as the Michilimackinac) to create a temporary five-year reservation for its bands. See id. Art. 3.
Two decades later, the federal government encountered resistance when it tried to negotiate collectively with this group of bands. The various groups insisted on negotiating independently and further demanded the government dissolve the Ottawa and Chippewa Nation. See Treaty with the Ottawa and Chippewa, 11 Stat. 621, Art. 5 (July 31, 1855). As part of an 1855 treaty, the government agreed to dissolve the Nation. Id. Relevant to this litigation, the government also purportedly set aside two land withdrawals for the exclusive use of the Mackinac Tribe. Twenty years later, though, the Secretary of the Interior terminated all federal services to the Mackinac.
Most recently, in 2011, several Mackinac groups consolidated to conduct an election under the IRA. To qualify for benefits under the IRA, tribes must meet certain conditions set by federal law. “The most important condition is federal recognition, which is a ‘formal political act confirming the tribe’s existence as a distinct political society, and institutionalizing the government-to-government relationship between the tribe and the federal government.’” California Valley Miwok Tribe v. United States, 515 F.3d 1262, 1263 (D.C. Cir. 2008) (quoting Cohen’s Handbook op Federal Indian Law § 3.02[3], at 138 (2005 ed.)). The definition of “recognition” has evolved over time but historically the United States recognized tribes through treaties, executive orders, and acts of Congress. See Harry S. Jackson III, Note, The Incomplete Loom: Exploring the Checkered Past and Present of American Indian Sovereignty, 64 Rutgers L. Rev. 471, 478 (2012). *756 In 1871, Congress abolished the practice of treatymaking after several tribes allied themselves with the Confederacy during the Civil War and the military advantage of the treaties declined. See id. at 476 & n.28. However, treaties that had been entered into prior to 1871 were still recognized. See 25 U.S.C. § 71.
In 1934, Congress codified its treatment of Indian tribes through the IRA. The IRA defines the term “Indian,” in part, to “include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction.” 25 U.S.C. § 479 (emphasis added). The Supreme Court has interpreted the phrase “now under Federal jurisdiction” to refer only to tribes that were under federal jurisdiction in 1934—the time of the IRA’s enactment. See Carcieri v. Salazar, 555 U.S. 379, 382-83, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009). The Court has not analyzed the meaning of the word “recognized” nor has it determined whether recognition must have existed in 1934.
Recognition by the federal government proceeded in an ad hoc manner, even after the passage of the IRA, with the Bureau of Indian Affairs (BIA) reviewing petitions for federal recognition on a case-by-case basis. Muwekma Ohlone Tribe v. Salazar, 708 F.3d 209, 211 (D.C. Cir. 2013). Finally, in 1978, Interior promulgated Part 83 of its regulations under the IRA (also known as the Federal Acknowledgment Process), which set out uniform procedures through which Indian groups could seek formal recognition. A group seeking recognition under Part 83 must submit a petition to Interior documenting certain criteria, including whether it has been identified as an American Indian entity on a “substantially continuous basis” since 1900; whether it comprises a “distinct community;” whether it has historically maintained “political influence or authority over its members;” and whether its membership “consists of individuals who descend from a historical Indian tribe.” See 25 C.F.R. § 83.11(a)-(c), (e). If a group successfully petitions, it is added to the list of federally recognized Indian tribes published by Interior. See 25 U.S.C. § 479a-l.
With respect to tribal organization, the IRA directs: “Any Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws.” 25 U.S.C. § 476(a). In 1981, Interior promulgated specific regulations governing this process in Part 81 of its regulations. See 25 C.F.R. pt. 81. Part 81 states, in broad terms, that any Indian tribe “included on” the list of federally recognized tribes or “eligible to be included” on that list can call for an election under the IRA.[1] See 25 C.F.R. § 81.1(w) (2014). Interior is obligated to hold such an election—assuming the tribe qualifies— within 180 days of receipt of a tribal request. 25 U.S.C. § 476(c)(1)(A). If a majority of the adult members of a tribe vote to ratify the constitution, then Interior must approve the document unless it violates federal law. Id. § 476(d)(1).
In August 2011, the Mackinac Tribe submitted a petition for a Part 81 election to the Secretary of Interior. The Secretary refused to conduct the election. The Tribe then brought an action in federal district court seeking declaratory and mandamus relief; specifically, it asked the court to *757 declare it a federally recognized Indian tribe and to order the Secretary to conduct an election under the IRA. The Secretary filed a motion to dismiss, arguing (in relevant part) that the Mackinac were not a federally recognized tribe for IRA purposes because they had not gone through the Part 83 acknowledgment process and therefore had failed to exhaust their administrative remedies. The district court converted the motion to dismiss into a motion for summary judgment and ruled for the Secretary.
In doing so, the court below declined to answer whether recognition under Part 88 is a necessary precursor to receiving an election under Part 81. The district court instead found the Tribe had to exhaust its administrative remedies by availing itself of the Part 83 process first. We review de novo the district court’s grant of summary judgment, Colbert v. Potter, 471 F.3d 158, 164 (D.C. Cir. 2006), and we affirm.
II
The district court applied our closest precedent. In James v. U.S. Department of Health and Human Services, we held that, as a matter of prudential exhaustion, a group of Indians seeking to be acknowledged by the Secretary as a federally recognized tribe must first attempt to gain that acknowledgement through the Part 83 process. 824 F.2d 1132, 1136-37 (D.C. Cir. 1987). In Muwekma Ohlone Tribe v. Salazar, we followed James and made clear that a tribe seeking to be acknowledged by the Secretary must pursue the Part 83 process even if the tribe claims, as the Mackinac Tribe does here, that it has previously been recognized by the federal government. 708 F.3d 209, 218-19 (D.C. Cir. 2013).
The Mackinac Tribe seeks relief different from what the tribes in James and Muwekma Ohlone sought—a secretarial election under the IRA rather than inclusion on the Secretary’s list of federally acknowledged tribes—but the rationale of those cases has persuasive force here as well. The Mackinac Tribe contends that, because it is a recognized tribe, it is eligible for a secretarial election. But no branch of government has determined whether the plaintiff Mackinac Tribe currently qualifies as a recognized tribe or as the tribe that was recognized in 1855.
Our decisions in James and Muwekma Ohlone teach that, when a court is asked to decide whether a group claiming to be a currently recognized tribe is entitled to be treated as such, the court should for prudential reasons refrain from deciding that question until the Department has received and evaluated a petition under Part 83. James gave good reasons for that restraint. Congress delegated to the Secretary the regulation of Indian relations and affairs, see generally 25 U.S.C. § 2, including authority to decide in the first instance whether groups have been federally recognized in the past or whether other circumstances support current recognition. James, 824 F.2d at 1137. The administrative exhaustion requirement honors that delegation. It also protects the autonomy of the agency that has the expertise to make (and correct) such determinations, preserves judicial resources, and better tees up disputes for eventual judicial review. See id. at 1137-38; see also United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 550 (10th Cir. 2001) (following James to conclude that “exhaustion is required when, as here, a plaintiff attempts to bypass the regulatory framework for establishing that an Indian group exists as an Indian tribe.”). Those prudential considerations apply to this case.
As the district court did, we reserve the question whether a group must *758 be recognized to be eligible to organize under the IRA and whether that recognition must be marked by the group’s appearance on the Secretary’s list of federally recognized tribes. In view of that reservation, we must acknowledge that our holding gives us some pause. If federal recognition is not a prerequisite to organization, requiring exhaustion via the lengthy and expensive Part 83 process unnecessarily imposes a potentially formidable hurdle on tribes seeking the Secretary’s assistance to organize. We decline, however, to order the Secretary to call and conduct an election to ratify the Mackinac Tribe’s constitution under § 476 of the IRA. We read the Mackinac Tribe’s complaint as seeking a writ of mandamus. Mandamus is only available in extraordinary circumstances when the plaintiff has a “clear and indisputable” right, and review by other means is not possible. Cheney v. U.S. District Court for the District of Columbia, 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). Given the interplay of recognition, acknowledgment, and organization, there is some question whether the Mackinac Tribe has a right to a secretarial election. Even assuming the Mackinac Tribe has a “clear and indisputable right,” we decline the requested mandamus because review will be possible after the Mackinac Tribe has completed the Part 83 procedure. See W. Shoshone Bus. Council v. Babbitt, 1 F.3d 1052, 1059 (10th Cir. 1993).
Ill
For the foregoing reasons, the district court’s grant of summary judgment is

Affirmed.

. Notably, while this litigation was pending, Part 81 was amended to alter the definition of a "tribe” for election eligibility purposes. "Tribe” is now defined to mean any tribe "listed in the Federal Register ... as recognized and receiving services” from BIA. 25 C.F.R. § 81.4. Both parties in their briefing rely on the old Part 81 definition—which was in effect at the time the Mackinac petitioned the Secretary—so we cabin our discussion to the earlier provision.