# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 8, 2006　　　Decided November 14, 2006

No. 05-5406

NATIONAL FAMILY PLANNING AND REPRODUCTIVE HEALTH
ASSOCIATION, INC.,
APPELLANT

V.

ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED
STATES, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv02148)

———

*James L. Feldesman* argued the cause for appellant. With
him on the briefs were *Kathy S. Ghiladi* and *Robert A.
Graham*.

*August E. Flentje*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief were
*Peter D. Keisler*, Assistant Attorney General, *Kenneth L.
Wainstein*, U.S. Attorney, and *Robert M. Loeb*, Attorney.

*Stephen H. Aden* argued the cause for appellees Christian Medical Association and American Association of Pro-Life Obstetricians and Gynecologists. With him on the brief was *Benjamin W. Bull*.

*Jay Alan Sekulow*, *Colby M. May* and *James M. Henderson, Sr.* were on the brief for *amici curiae* for U.S. Representative Henry J. Hyde, et al. in support of appellees.

Before: GINSBURG, *Chief Judge*, and SENTELLE, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:    At the end of 2004 Congress adopted a provision commonly known as the Weldon Amendment (named after Representative David Weldon), prohibiting recipients of federal grant funds from discriminating against individuals or entities that refuse to provide or refer for abortions.  Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, § 508(d), 118 Stat. 2809, 3163.  It reenacted the same provision the next December. Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109-149, § 508(d), 119 Stat. 2833, 2879–80. Five days after the initial enactment, the National Family Planning and Reproductive Health Association filed suit in district court.  Its substantive claims—at least the ones making it to the appeal—are that the amendment's alleged vagueness violates the First Amendment, for which it cites *Rust v. Sullivan*, 500 U.S. 173 (1991), and the limits of Congress's spending power, for which it cites *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981) (holding that a statute exercising Congress's spending power imposes legally binding conditions on a recipient state only if it expresses the

binding character unambiguously). The district court found standing but on the merits denied the requested injunction and granted summary judgment for the government. We find no standing.

* * *

Under Title X of the Public Health Service Act, 42 U.S.C. § 300, the Secretary of Health and Human Services "is authorized to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects . . . ." Most Title X funds flow initially to state and local governmental agencies and non-profit organizations. These grantees function as intermediaries that in turn distribute the funds to subgrantees who actually administer the programs. The plaintiff association is an organization comprised largely of Title X grantees and subgrantees, including state and local agencies, nonprofit organizations, clinics, and individuals employed by such entities.

The association's vagueness theory rests in large part on an alleged conflict between the Weldon Amendment and a Health and Human Services ("HHS") regulation governing Title X funds. The regulation, most recently amended in 2000, requires all recipients of Title X funds to "offer pregnant women the opportunity to be provided information and counseling regarding . . . pregnancy termination." 65 Fed. Reg. 41,270, 41,279/1 (July 3, 2000). Neither party disputes that the regulation was an appropriate exercise of the Secretary's rulemaking authority (though the government notes, and plaintiff doesn't contest, that in the event of conflict the regulation must yield to a valid statute). The Weldon Amendment, on the other hand, protects institutional

and individual providers that wish *not* to provide or refer for abortions:

> (1) None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

> (2) In this subsection, the term "health care entity" includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.

Consolidated Appropriations Act, 2005, § 508(d).

The complaint asserts that the association's members do not know how to abide by the 2000 HHS regulation as well as the Weldon Amendment and are therefore in jeopardy of losing federal grants. Arguing that its members face pervasive uncertainty as to their obligations under the two provisions, it seeks declaratory relief and a preliminary injunction against enforcement of the amendment.

\* \* \*

Constitutional standing requires that a plaintiff show "injury in fact," which the Supreme Court has defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotations omitted).

An actual withdrawal of funding from the association's members would clearly qualify, but the association doesn't suggest that any such withdrawal has occurred.

The association does say, however, that its members face an imminent threat of injury, including loss of funding, because of the alleged conflict between the regulation and the amendment. They claim to be in a Catch-22: If they obey the amendment, they'll violate the regulation, and vice versa. Either way, they say, they are bound to violate one of the conditions of their funding. Although of course a valid statute always prevails over a conflicting regulation, the alleged vagueness of the statute leaves the association uncertain whether the amendment or the regulation will govern a variety of situations. Compare *Abbott Laboratories v. Gardner*, 387 U.S. 136, 153–54 (1967), where the plaintiff firms faced the hardship of choosing (without authoritative guidance) between compliance with a possibly unlawful regulation at considerable expense, and non-compliance, at the risk of being subjected to after-the-fact enforcement that would entail fines and reputational losses. But even if the same standard applied to challenges to a statute as to a regulation, cf. *Seegars v. Gonzales*, 396 F.3d 1248, 1254 (D.C. Cir. 2005) (noting a possible distinction), the association falls far short of showing the necessary likelihood of any injury.

We start by noting a background point—the association's complete failure to show that HHS's enforcement mechanism is one that would really burden a grantee that guessed wrong. There is no suggestion in its papers that good-faith conduct violating a grant condition would trigger an immediate funding cut-off, much less the sort of retroactive penalty that was involved in *Abbott Labs*.

Turning to the interaction of the substantive provisions themselves, we must look separately at the Weldon

Amendment's conditions on Title X grantees with respect to *individuals* who refuse to refer for or provide abortions, and *organizations* so refusing. We start with grantees' obligations to individuals.

The association asserts that if an individual caregiver objects to providing abortion counseling to a pregnant woman but wants to retain a pregnancy counseling job, reassigning that caregiver to another job might amount to "discrimination" banned by the amendment. But Congress enacted a provision in 1974 similarly protecting exercises of individual rights of conscience, saying that no individual could be compelled to perform a service, in conjunction with an HHS program, that "would be contrary to his religious beliefs or moral convictions." National Research Act, Pub. L. No. 93-348, § 214, 88 Stat. 342, 353 (codified at 42 U.S.C. § 300a-7(d)).

Despite the apparently similar potential for conflict between the pre-Weldon conscience provisions and the current Title X regulation (dating from 2000), they have enjoyed a quite peaceful co-existence. Plaintiff doesn't point to a single instance in which the government has treated the reassignment of a caregiver who refuses to provide abortion counseling as "discrimination" against that caregiver, or in which it has questioned a member's funding because of the way the member navigated between the regulations and the conscience provisions. The association's anomalous equation of reassignment with discrimination is particularly suspect because Congress, since 1996, has forbidden "discrimination" against an individual who "refuses . . . to perform . . . abortions, or to provide referrals for . . . abortions." Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 515, 110 Stat. 1321, 1321-245 (codified at 42 U.S.C. § 238n(a)(1), (c)(2)). But the 1996 provision hasn't given rise to the parade of horribles that plaintiff hypothesizes—not even to a single horrible.

To support its notion that the Weldon Amendment's protection of individual caregivers may impose different requirements on Title X grantees than do the earlier conscience provisions, plaintiff points to the absence of any reference to "conscience" in the amendment. This is a red herring. Let us assume that under the amendment individual caregivers may lawfully refuse to participate in abortion provision or referral, without any adverse employment consequences, on broader grounds than formerly—conscience *and*, to state it as broadly as possible, "any other grounds." We cannot see how a broadening of the grounds for resisting abortion activity would suddenly transform an accommodating agency's reassignment into an act of discrimination. Plaintiff offers us no help on this.

Plaintiff has thus failed to identify any reason why the concept of discrimination forbidden by the earlier conscience provisions and the amendment at all hinges on the scope of those various provisions. Furthermore, plaintiff does not point to any desired change in its members' conduct that would create some new risk for their funding. Accordingly, the association has shown no material change since 2000 in terms of members' obligations to respect individual views on abortion, and the risk that its members will face the claimed dilemma appears to be nil. See *American Library Ass'n v. Barr*, 956 F.2d 1178, 1188 (D.C. Cir. 1992).

As to members' duties to "health care entit[ies]" that are not individuals, the association alleges that the HHS regulation requires that recipients distribute funds only to subgrantees that agree to provide abortion counseling, whereas the Weldon Amendment, for the first time (with narrow exceptions), forbids discrimination against potential subgrantees (i.e., not individuals) that refuse to refer for abortions. Because the Weldon Amendment appears to extend pre-existing conscience rights to hitherto uncovered

entities, we do not have the benefit, in this context, of a six-year track record. Nonetheless, we think that here too plaintiff has failed to show the imminence of any serious dilemma.

First, the association has about 4000 members, yet in the period between enactment and the district court's September 28, 2005 denial of a preliminary injunction plaintiff offered no suggestion that any member encountered the slightest hint from HHS that its practices might imperil its funding under Weldon. Moreover, there are structural reasons to doubt that the issue will ever come up. In 2000 HHS Secretary Shalala declined to create a specific exception from the pending regulation's mandatory referral requirement for organizations resisting provision of abortion counseling or referrals; she explained that she was "unaware of *any* current grantees that object to the requirement for nondirective options counseling, so this suggestion appears to be based on more of a hypothetical than an actual concern." 65 Fed. Reg. at 41,273/3 (emphasis added). Nowhere in its papers has plaintiff claimed that such grantees in fact existed. "Litigants are . . . not entitled to an adjudication of every question they perceive after reading through the text of legislation." *American Library Ass'n*, 956 F.2d at 1197.

The supposed dilemma is particularly chimerical here because the association's asserted injury appears to be largely of its own making. We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing. Such harm does not amount to an "injury" cognizable under Article III. *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996); *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1276–77 (D.C. Cir. 1994). Furthermore, even if self-inflicted harm qualified as an injury it would not be fairly traceable to the defendant's

challenged conduct. *Brotherhood of Locomotive Engineers and Trainmen v. Surface Transportation Board*, 457 F.3d 24, 28 (D.C. Cir. 2006); *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989). Here the association has within its grasp an easy means for alleviating the alleged uncertainty. It could inquire of HHS exactly how the agency proposes to resolve any of the conflicts that it claims to spot between the amendment and the regulations. Under the Administrative Procedure Act, the association has the right to petition HHS to adopt a rule clarifying the responsibilities of Title X grantees. 5 U.S.C. § 553(e). It has never done so. Plaintiff's briefs constantly lament that the government has failed to answer its hypotheticals, see, e.g., Plaintiff's Br. at 13–17, but the association refers only to questions posed to the government's litigation counsel. Failure to seek clarification from the agency is especially troubling here because HHS is entitled to deference in interpreting its own regulation and (under many circumstances) the statutes that it administers. *National Mining Ass'n v. Babbitt*, 172 F.3d 906, 911 (D.C. Cir. 1999); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). As the association has *chosen* to remain in the lurch, it cannot demonstrate an injury sufficient to confer standing.

* * *

As plaintiff lacks standing to challenge the Weldon Amendment, the judgment below is vacated and the case remanded to the district court to dismiss for lack of jurisdiction.

*So ordered.*