# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 22-5262**

L'ASSOCIATION DES AMÉRICAINS ACCIDENTELS, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF STATE, ET AL.,
APPELLEES

**September Term, 2022**

FILED ON: AUGUST 18, 2023

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02933)

Before: MILLETT, PILLARD and WILKINS, *Circuit Judges*.

### J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the appeal be **DISMISSED**.

In March 2020, responding to a global pandemic, the State Department curtailed nonemergency services at all United States consular posts abroad. People seeking to relinquish their U.S. citizenship were thus temporarily unable to appear before a consular officer and swear an oath of their knowing and voluntary desire to give up their U.S. nationality. *See* 8 U.S.C. § 1481(a)(5). Because Department policy requires an in-person appearance and oath, *see* 7 FOREIGN AFFAIRS MANUAL § 1262.3, people seeking to shed their U.S. citizenship had to wait. Six weeks after the initial suspension, the State Department adopted a reopening framework that allowed each consular post to determine which services it could safely offer under local public health conditions. Some diplomatic missions resumed in-person loss-of-nationality appointments, others placed requestors on waitlists, and some have not administered renunciation oaths at all for more than three years.

1

Eleven individuals and an advocacy organization sued the State Department, alleging that the State Department's suspension of and delay in resuming renunciation services violated the fundamental right to expatriate voluntarily and amounted to unreasonably delayed agency action. The district court dismissed plaintiffs' challenge to the suspension as moot, dismissed the substantive due process challenge for failure to state a claim, and granted summary judgment to the State Department on the claim of unreasonable delay. Plaintiffs now appeal.

We dismiss the appeal for lack of jurisdiction. Time has whittled away the plaintiffs' live claims. The claims of seven individual plaintiffs are moot because they have successfully renounced their American citizenship. The remaining four individual plaintiffs lack standing to seek injunctive relief because they either failed to request or to attend a renunciation appointment. The State Department policy suspending renunciation services worldwide is no longer in place, mooting the organization's suspension challenge. And, finally, the organization's challenge to delays in processing renunciation requests is also moot because the only member who has not yet renounced has been granted an appointment to appear in person later this year to renounce his citizenship.

## I.

The eleven individual plaintiffs in this case are—or, as we will explain, were—Americans living abroad. Four reside in France, three in Germany, and the remaining plaintiffs live in Finland, Switzerland, the Netherlands, and Singapore. Co-plaintiff L'Association des Américains Accidentels (the Association) is a French nonprofit organization whose stated mission is "to defend and represent the interests of persons holding American nationality, but residing outside the United States, against the harmful effects of the extraterritorial nature of the U.S. law." Am. Compl. ¶ 15, *L'Association des Américains Accidentels v. U.S. Dep't of State*, No. 1:21-cv-02933-TNM (D.D.C. Dec. 27, 2021), ECF No. 12 [hereinafter Am. Compl.]. Plaintiffs allege that, by enacting the Foreign Account Tax Compliance Act (FATCA), 26 U.S.C. §§ 1471-1474, Congress made the lives of Americans abroad "a financial nightmare." Am. Compl. ¶ 3.

Each individual plaintiff wishes to relinquish U.S. citizenship to avoid their reporting obligations and other direct or indirect tax-compliance burdens of U.S. law. While there are several paths to surrendering citizenship, these plaintiffs seek to pursue one in particular: swearing an oath of renunciation abroad before a U.S. diplomatic or consular officer pursuant to 8 U.S.C. § 1481(a)(5). Until a prospective renunciant swears the oath of renunciation, a consular officer confirms that the oath is voluntarily and knowingly made, *see* 7 FOREIGN AFFAIRS MANUAL § 1261(d), and the State Department issues a certificate of loss of nationality (CLN), *see* 22 C.F.R. § 50.50, the prospective renunciant will be considered an American citizen both in the United States and abroad, *see* 8 U.S.C § 1501.

The global spread of a novel coronavirus, COVID-19, interrupted the ordinary process by which Americans may renounce their citizenship at diplomatic missions overseas. In the early days of the COVID-19 pandemic, the Office of Management and Budget directed agencies to "take appropriate steps to prioritize all resources to slow the transmission of COVID-19, while ensuring [that] mission-critical activities continue." J.A. 127 (Gov't Statement of Material Facts Not in

Dispute (SUMF) ¶ 4) (alteration in original) (quoting J.A. 47-48 (Benning Decl. ¶ 18)). In response, the State Department suspended "routine" consular services on March 20, 2020, including processing non-emergency passport requests, administering voting assistance programs, and scheduling citizenship-renunciation appointments. *Id*. (Gov't SUMF ¶ 5); J.A. 47-49 (Benning Decl. ¶¶ 18-20).

That worldwide suspension was short-lived. By May 1, 2020, the State Department adopted the Diplomacy Strong Framework, under which the principal officers in charge of U.S. offices or diplomatic missions abroad had discretion to determine which services their posts could safely offer. *See* J.A. 48-49 (Benning Decl. ¶¶ 19-20); J.A. 90-91 (diplomatic cable announcing Diplomacy Strong Framework); 22 U.S.C. § 3902(3). That Framework described a multi-phased approach to discretionary resumption of in-person consular operations, with renunciation appointments becoming available in Phase Three. J.A. 48-49 (Benning Decl. ¶ 20).

In September 2021, the State Department policy shifted again, this time to a "holistic" approach known as the "COVID-19 Mitigation Process" that allowed each consular post to determine what services it could offer safely based on local public health indicators. *See* J.A. 50-51 (Benning Decl. ¶ 23); J.A. 120, 124 (announcing that the COVID-19 Mitigation Process supersedes the Diplomacy Strong Framework). Under the COVID-19 Mitigation Process, as with the Diplomacy Strong Framework before it, the availability of renunciation appointments would depend on the principal officers' assessment of risk. Those missions that resumed renunciation appointments faced backlogs; many resorted to placing applicants on waitlists, and processing appointment requests in the order that they were received. *See* J.A. 54-61 (Benning Decl. ¶¶ 28, 31-36).

In November 2021, the Association and individual expatriates sued the State Department, alleging that State's total suspension of renunciation interviews violated the Due Process Clause of the Constitution and that the suspension and subsequent interview delays violated the Administrative Procedure Act (APA). *See* Compl. ¶¶ 7, 10, 15-25, 104, *L'Association des Américains Accidentels v. U.S. Dep't of State*, No. 1:21-cv-02933-TNM (D.D.C. Nov. 8, 2021), ECF No. 1. The plaintiffs asserted that the State Department had effectively eliminated their means of "exercis[ing] the right to voluntarily renounce," which they claimed violated both a fundamental constitutional right and a statutory duty. Am. Compl. ¶ 103. The eleven individual plaintiffs wished to swear the renunciation oath at U.S. missions in Europe and Asia, but some had "been waiting for close to two years" to do so. Am. Compl. ¶ 106.

Plaintiffs sought declaratory and injunctive relief. *See* Am. Compl., Prayer for Relief (a)-(g). First, they sought a declaratory judgment that the State Department's suspension of and delay in providing renunciation services violated both the Due Process Clause and the APA. Am. Compl., Prayer for Relief (a)-(d). Second, plaintiffs sought "an order requiring Defendants to immediately resume renunciation-related services," "an order requiring Defendants to provide renunciation-related services within a reasonable timeframe with all deliberate speed and without further delay," and "[t]o the extent necessary, . . . an order requiring Defendants to reform their renunciation policies and practices to ensure that these services are provided in a timely and efficient manner." Am. Compl., Prayer for Relief (e)-(g).

3

The parties filed cross-motions for summary judgment. The district court dismissed as moot plaintiffs' challenge to the suspension of renunciation services but addressed on the merits their challenge to the waitlists. *L'Association des Américains Accidentels v. U.S. Dep't of State* (*L'Association*), 633 F. Supp. 3d 74, 77 (D.D.C. 2022). On the waitlist challenge, the district court granted summary judgment to the State Department, finding no due process violation or unreasonable delay. *Id.* at 87. Plaintiffs timely appealed, challenging the district court's holding that the suspension claim was moot, that plaintiffs had failed to state a legally viable due process claim, and that the government was entitled to summary judgment on the APA claim.

As the litigation progressed and the COVID-19 pandemic abated, many embassies returned to routine operations and individual plaintiffs obtained the relief they requested. In March 2022, three months after filing suit, two plaintiffs successfully renounced their U.S. citizenship at posts in Singapore and Milan and received certificates to that effect. *See* J.A. 140-41 (Kracklauer Decl. ¶¶ 1, 11); J.A. 178 (Supp. Benning Decl. ¶ 5). By June 2022, American diplomatic posts in Paris and Marseille were "operating at all functions and not subject to COVID-19 related restrictions," enabling another two plaintiffs to attend in-person renunciation interviews, swear the oath, and receive CLNs. J.A. 177 (Supp. Benning Decl. ¶ 4); *see L'Association des Américains Accidentels v. U.S. Dep't of State*, No. 22-5262, Doc. 1999596, at 2 (D.C. Cir. May 17, 2023) [hereinafter State Department Letter]. By the time the district court issued its memorandum opinion, yet another plaintiff had successfully renounced his citizenship at a mission in Frankfurt, Germany. State Department Letter 2; *see also* J.A. 177 (Supp. Benning Decl. ¶ 3). And, by the time the case was argued before this court in May 2023, two more plaintiffs had successfully renounced in Switzerland and France, leaving only four individual plaintiffs who had not yet attended a renunciation interview. State Department Letter 2; J.A. 177, 179 (Supp. Benning Decl. ¶¶ 4, 8). Of those four individuals, one secured an appointment to take the oath at the consular post in Frankfurt, Germany but failed to attend. State Department Letter at 2. As for the final three, the State Department attests—and plaintiffs do not dispute—that those plaintiffs did not request appointments at all. *See* J.A. 10-11; J.A. 57, 59 (Benning Decl. ¶¶ 32, 34), J.A. 130; State Department Letter 2.

Some embassies have yet to resume offering the full complement of consular services. But of the litigants identified before this court, only Olivier Vaury, who is a not a named plaintiff but a member of L'Association des Américains Accidentels identified in support of the organization's standing, has not had the opportunity to renounce his citizenship before a consular officer. Mr. Vaury's appointment has been scheduled for November of this year.

## II.

We lack jurisdiction over plaintiffs' challenge to the global suspension of renunciation services and the State Department's allegedly unreasonable delay in holding oath appointments. The claims of seven of the individual plaintiffs are moot and the remaining four individuals lack standing to seek injunctive or declaratory relief. The Association lacks standing to pursue its challenge to appointment delays because Olivier Vaury's individual claim, on which the Association's standing depends, is also moot and therefore not redressable by this court.

Our jurisdiction is limited to the resolution of "cases" and "controversies" within the meaning of Article III of the Constitution. Plaintiffs who invoke our jurisdiction must therefore establish standing by showing that they have suffered a legally cognizable injury that is traceable to the defendant and likely to be redressed by the requested relief. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). That requirement applies throughout the litigation. When a case presents issues that "are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot "and therefore no longer a 'Case' or 'Controversy' for purposes of Article III." *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).

First, we lack jurisdiction over the plaintiffs' challenge to the State Department's suspension of renunciation services. The Association and the seven individual plaintiffs who have succeeded in renouncing their American nationality no longer have a "personal stake" in the resolution of the suspension claim. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)); *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). They have received the relief they requested: The State Department ended its suspension of renunciation services and made those services available to plaintiffs. Am. Compl. ¶ 108; *see also id.* Prayer for Relief (e)-(g). Now that the State Department has provided and plaintiffs have taken advantage of the opportunity to expatriate—or failed to do so for reasons not of the State Department's making—a decision of this court could neither "compel that result . . . no[r] serve to prevent it." *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (per curiam); *accord Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 437 (D.C. Cir. 2018) (per curiam). Their claims are therefore moot. *See DeFunis*, 416 U.S. at 317; *see also Lemon v. Green*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (holding plaintiff's claims moot when "intervening events make it impossible [for the court] to grant the prevailing party effective relief" (quoting *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996))).

Plaintiffs contend that the suspension policy continues, albeit under a different name. They emphasize that the State Department has yet to resume offering renunciation services at posts in the Czech Republic, Latvia, and Greece. But none of the four individual plaintiffs, nor any identified member of the Association who has yet to renounce, seeks to do so at those posts. And in any case, since June 2021, the State Department has required all diplomatic missions to provide consular services to all U.S. citizens regardless of residence. J.A. 102-03. Thus, even if there were a plaintiff who resided in a country in which the U.S. consular post has not resumed renunciation services, such an individual would be able to go to an alternative consulate or embassy to fulfill the requirements of expatriation. In sum, an order declaring suspension of renunciation services unlawful and setting it aside would be purely advisory.

5

Seeking alternative footing from which to press their challenge to the now-terminated suspension of renunciation services, plaintiffs invoke the exception to mootness for issues capable of repetition yet evading review, *see* Appellants Br. 15, but that doctrine is a poor fit for this claim. The exception applies when a challenged action is too short in duration to be litigated fully before its cessation and there is a reasonable expectation that the same plaintiff will be subjected to the same action again. *See Shapiro v. U.S. Dep't of Justice*, 40 F.4th 609, 615 (D.C. Cir. 2022) (citing *Weinstein v. Bradford*, 419 U.S. 147, 149 (1975) (per curiam)). These plaintiffs lack any such reasonable expectation. Nor do plaintiffs argue that any other exception to mootness applies.

Even allowing that the six-week suspension was too brief for its legality to be litigated, the individual plaintiffs who have successfully renounced their U.S. citizenship could not be affected by any future denial of renunciation services. And the plaintiffs who have yet to renounce lack standing to challenge the unavailability of appointments—whether due to past suspension or continuing backlogs—because any asserted injuries would be self-inflicted: Three of them did not request renunciation appointments at any consular post, and the fourth failed to appear for a scheduled appointment. Their lack of opportunity to renounce citizenship before a consular officer is thus of their own making, not fairly traceable to the State Department's conduct. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015); *Nat'l Fam. Plan. & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006).

In any event, plaintiffs' protest that the global suspension of in-person services "can be easily reinstated," whether in response to COVID-19 or "for other reasons, such as the Ukrainian-Russian war or future pandemics," Appellants Br. 16-17, is speculative. There is little reason to think that the State Department is poised to reimpose a global suspension of renunciation services that would have any effect on any of the plaintiffs in this case. Further, should the State Department suspend renunciation services in response to another crisis, the legal issues presented would differ and, as the State Department points out, "would need to be evaluated against a different factual record." Appellees Br. 27.

Second, we lack jurisdiction over the plaintiffs' claim of unreasonable delay in scheduling renunciation appointments. Plaintiffs assert that the State Department has abdicated its "mandatory duty to process voluntary renunciation applications," Am. Compl. ¶ 102, in violation of the Administrative Procedure Act, and seek an order requiring the State Department "to provide renunciation-related services within a reasonable timeframe," *id.* Prayer for Relief (f).

As to this challenge, too, no individual plaintiff has a live claim. For the reasons already noted in connection with the suspension claim, seven of the individual plaintiffs' claims are moot and the other four individual plaintiffs lack standing. And the Association lacks a live unreasonable-delay claim. Plaintiffs challenge delays in receiving appointments to take the renunciation oath but do not allege that the State Department has unlawfully delayed processing applications after interviews have been scheduled. Because the only member the Association identified to support its associational standing has been scheduled for a renunciation appointment, the Association can no longer establish redressable harm from the challenged delay in scheduling a renunciation interview.

6

A membership organization has standing when (1) "at least one of [its] members would otherwise have standing to sue in his or her own right;" (2) the interest the organization seeks to protect is "germane" to its purpose; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members." *See Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014); *accord Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). To establish standing, the organization must identify through affidavits or other evidence a specific member who has suffered an injury-in-fact that can be fairly traced to the defendant's conduct and redressed by a favorable judicial decision. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504, 508 (D.C. Cir. 2019) (explaining that, "[b]ecause the district court disposed of this case at summary judgment," the plaintiff must adduce "specific facts" demonstrating standing (quoting *Shays v. FEC*, 414 F.3d 76, 84 (D.C. Cir. 2005))). The Association fails to show redressability here.

The Association rests its standing to challenge the State Department's delays on the claim of one member, Olivier Vaury. Mr. Vaury attested before the district court that he is a member of the Association, that he requested an appointment to renounce his citizenship before a consular officer in January and again in April 2022, and that his appointment "ha[s] not yet been scheduled." J.A. 148 (Vaury Decl. ¶¶ 1-3). The State Department recently notified the court that it has processed Mr. Vaury's application and scheduled him for an in-person oath appointment at the Paris embassy in November 2023. State Department Letter 2; *see also L'Association des Américains Accidentels v. U.S. Dep't of State*, No. 22-5262, Doc. 1998922, at 3 (D.C. Cir. May 12, 2023) (Ex. A). A court order ensuring Mr. Vaury an appointment for an in-person interview within a reasonable time would have fully redressed his injury from the unreasonable delay alleged in the Association's complaint. The State Department's provision of that very relief thus leaves this court no more to do. *See United Steelworkers of Am., AFL-CIO-CLC v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (per curiam). The Association's reference to "[a]pproximately 852 [unnamed] members" who have yet to be able to renounce their U.S. citizenship, J.A. 168, fails to demonstrate the requisite specificity to establish standing, *see Shays*, 414 F.3d at 84. Without evidence identifying a specific member whose claimed injury-in-fact this court could direct the district court on remand to redress, the Association cannot invoke associational standing to press its members' claims.

\* \* \*

For the foregoing reasons, we dismiss the appeal for lack of jurisdiction.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(b).

7

**Per Curiam**

                                        **FOR THE COURT:**
                                          Mark J. Langer, Clerk

BY:    /s/
              Daniel J. Reidy
              Deputy Clerk