# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

**No. 23-1227**                    **September Term, 2025**

FILED ON: MAY 19, 2026

CAGE RANCH SOLAR, LLC AND CAGE RANCH SOLAR II, LLC,
            PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
            RESPONDENT

SOUTHWEST POWER POOL, INC.,
            INTERVENOR

—————————————

Consolidated with 23-1304

—————

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

—————

Before: KATSAS and PAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

## J U D G M E N T

These petitions for review were considered on the record from the Federal Energy Regulatory Commission and on the briefs and oral arguments of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is now

**ORDERED AND ADJUDGED** that the petitions for review be **DISMISSED**.

\*    \*    \*

Cage Ranch Solar, LLC and Cage Ranch Solar II, LLC (collectively, "Cage Ranch") petition for review of orders of the Federal Energy Regulatory Commission denying Cage Ranch's

complaint and request for a waiver. Before the FERC, Cage Ranch argued that Intervenor Southwest Power Pool, Inc. used a fundamentally flawed study model to assign network upgrade costs to Cage Ranch. Cage Ranch also argued the FERC should waive the deadline by which Southwest required Cage Ranch to post financial security to maintain its position in Southwest's interconnection queue. Before us, Cage Ranch argues the FERC failed to ensure the costs assigned to it were just and reasonable and was otherwise arbitrary and capricious. We conclude that Cage Ranch has failed to show it suffered an injury necessary to establish its standing, and we accordingly dismiss the petitions.

## I

Cage Ranch is the developer of a 900 MW solar generation project in Texas. In 2017, in order to connect its project to the electrical grid, Cage Ranch submitted interconnection requests to Southwest, a regional transmission organization. Southwest's interconnection study process is cluster-based and involves three phases. Following Phase 1 and Phase 2 is a "decision point," during which an interconnection customer must decide whether to post the required financial security. Failure to do so within 15 business days results in withdrawal of the customer's interconnection request and loss of its position in the interconnection queue. At Decision Point 2, the amount of financial security an interconnection customer must post is 20% of the network upgrade costs assigned to that customer by the interconnection study, less the amount of any security that customer has already provided.

Southwest assigned Cage Ranch's interconnection requests to Group 5 of the 2017-002 study cluster. Southwest posted Phase 1 results for this group in February 2022, preliminarily assigning $302 million in network upgrade costs to Cage Ranch. As required by Southwest's Tariff, Cage Ranch paid $4.19 million in financial security and proceeded to Phase 2. In August 2022, Southwest posted Phase 2 results, which allocated $311 million in network upgrade costs to Cage Ranch. Cage Ranch would have had to post approximately $60 million by September 20, 2022 to proceed to Phase 3.

Rather than post the $60 million, on September 20, 2022 Cage Ranch filed a complaint with the FERC challenging Southwest's Phase 2 cost-allocation model as defective. Because Southwest's Tariff treats the failure timely to post financial security as a withdrawal, Cage Ranch also sought a waiver of the deadline and withdrawal provisions in the Tariff while the FERC considered its challenge. The FERC denied both Cage Ranch's complaint and its request for a waiver of the deadline and withdrawal provisions in the Tariff, and confirmed that result in an order addressing Cage Ranch's arguments raised on rehearing.

## II

Under the Federal Power Act, a party "aggrieved" by an order of the FERC may seek judicial review of that order. 16 U.S.C. § 825l(b). "A party is aggrieved if it makes the same showing of injury that suffices to establish standing under Article III of the Constitution of the

United States." *Mich. Elec. Transmission Co. v. FERC*, 141 F.4th 1296, 1302 (D.C. Cir. 2025) (cleaned up). In order to establish its standing, "A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *FEC v. Cruz*, 596 U.S. 289, 296 (2022).

In a case involving direct review of agency action, the petitioner's "burden of production" to establish its standing "is the same as that of a plaintiff moving for summary judgment." *Entergy Ark., LLC v. FERC*, 134 F.4th 576, 580 (D.C. Cir. 2025) (cleaned up). "The petitioner must therefore either point to record evidence sufficient to support its standing or submit additional evidence making that showing"; failure to do so "requires dismissal of the action." *Id.* (cleaned up). If, however, a petitioner's standing to seek review is self-evident from the administrative record, then that obviates the need for separate proof of standing. *See Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002); *see also Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 226 (D.C. Cir. 2018).

### III

Our standing inquiry begins, and in this case ends, with the injury-in-fact requirement. In its opening brief, Cage Ranch suggests it suffered economic harm because a favorable ruling would "reduce the costs Cage Ranch was originally assigned by millions of dollars." In fact, however, Cage Ranch has not shown that it incurred any monetary loss, nor does it face imminent costs because it has no active interconnection request before Southwest.[*] The only potentially cognizable injury Cage Ranch can claim, therefore, is the loss of its position in the queue.

Neither the FERC nor Southwest challenged Cage Ranch's standing in their principal briefs. During oral argument, however, the court explored both standing and mootness at length. In particular, counsel for Cage Ranch fielded questions regarding whether Cage Ranch's claimed injury was self-inflicted when it decided not to post the financial security required by Southwest's Tariff in order to maintain its queue position. *See Nat'l Fam. Plan. & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[S]elf-inflicted harm doesn't satisfy the basic requirements for standing. Such harm does not amount to an 'injury' cognizable under Article III"). We ordered supplemental briefing on these jurisdictional issues.

In its opening supplemental brief, Cage Ranch argued only that it was injured by its loss of position in the queue. Cage Ranch asserts that, because of the substantial backlog in interconnection requests, "losing a queue position effectively kills a project." Additionally, citing *Orangeburg v. FERC*, 862 F.3d 1071, 1077–78 (D.C. Cir. 2017), it claims it was denied the opportunity "to connect to the grid 'on its desired terms' — *i.e.*, based on the queue position it

---

[*] As the FERC points out, the financial security Cage Ranch posted at earlier stages was presumably refunded to Cage Ranch under the terms of Southwest's Tariff, as Cage Ranch makes no claim to the contrary. *See* 183 FERC ¶ 61,138, P 4 (2023) ("[T]he financial security payments are refundable if they are not needed to make other interconnection customers whole due to the withdrawal").

had."

The FERC and Southwest counter that Cage Ranch's claim is impermissibly general, failing to specify the nature of Cage Ranch's injury. The FERC further notes that nothing prevented Cage Ranch from submitting another interconnection request during the pendency of the administrative proceedings or of this litigation. Moreover, because the grid is ever-changing, they assert Cage Ranch may well find it less costly to resubmit its request and take a later queue position. Finally, the FERC and Southwest contend that Cage Ranch's injury is self-inflicted because it decided neither to post the financial security required by Southwest's Tariff nor to challenge that provision in the Tariff.

Even assuming Cage Ranch is correct in its unexplained claim that "losing a queue position effectively kills a project," more needs to be said to document an injury.** *See Sierra Club*, 292 F.3d at 899–900. As we explained in an analogous situation:

> Entergy points to nothing in the record indicating that it will be financially injured by grid unreliability. Entergy's briefing never actually states that it will suffer a financial injury and never seeks to quantify any costs. Of course, it's easy to imagine potential injuries — say, costs to add backup capacity or to prepare for shortages — but those appear nowhere in the brief. As the party bearing the burden, Entergy must actually state — and show — that it will be harmed by grid unreliability.

*Entergy Ark.*, 134 F.4th at 583. Cage Ranch's deficiencies are comparable. Its briefs provide virtually no specifics about the claimed harm, and it does not seek to quantify any costs. We are simply left in the dark as to why "losing a queue position effectively kills [this] project."

Nor does Cage Ranch identify sufficient evidence or provide an affidavit in support of its claimed injury. Its first supplemental brief, much like the original brief, is entirely devoid of relevant record citations. Its final supplemental brief does quote the FERC's initial decision referring to Cage Ranch's administrative complaint: "Cage Ranch asserts that, absent waiver, Cage Ranch would lose the value of the investments it has made in connection with the development of the Project, including land acquisitions and development costs." 183 FERC ¶ 61,138, P 90 (2023). Evidence supporting this allegation should have been offered at the latest in the first supplemental brief, *see Sierra Club*, 292 F.3d at 900, absent which the claim is too barebones to satisfy Cage Ranch's burden. *See Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 612–13 (D.C. Cir.

---

** When "a party raises a comprehensible challenge to a petitioner's standing, the petitioner is well advised to respond with precision and clarity to make it clear that standing is present." *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 495 (D.C. Cir. 2005). Even if Cage Ranch reasonably thought (albeit did not claim) its standing was self-evident before oral argument, it could not have reasonably thought so after oral argument. Whether "standing is self-evident must be judged from the perspective of the court," and it was "clear from some of the questioning at oral argument [that] the judges struggled with the [standing] issue." *Id.* Upon issuance of the supplemental briefing order, Cage Ranch was on notice that it must substantiate its standing with evidence.

2019).***

Even the logic underlying Cage Ranch's allegation is unclear. If Cage Ranch needs to dispose of the land it acquired for the project, it gives the court no reason to think it would incur a loss in doing so. Additionally, absent more detail, we do not see why Cage Ranch would necessarily lose the value of costs incurred in developing the project, as Cage Ranch can submit another interconnection request. Presumably, any sunk costs related to the development or the planning and preparation of the proposal will still reap benefits upon resubmission.

Finally, Cage Ranch's reliance upon *Orangeburg* is unpersuasive because its claim of injury does not resemble the desired-products injury that we recognized in that case. "A change in product terms establishes standing on a desired-products theory only insofar as it amounts to concrete harm, as in *Orangeburg*, where the City's inability to purchase wholesale power on its desired terms substantially increased the product's cost." *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 859–60 (D.C. Cir. 2021) (cleaned up). The challenged action here did not change the terms on which the desired product was available to Cage Ranch. Cage Ranch had the opportunity to connect to the grid either by posting financial security before the deadline and retaining its initial queue position, or by resubmitting an interconnection request and receiving a new queue position. It pursued neither opportunity, and the FERC's decision denying Cage Ranch's complaint and waiver request did not change those opportunities. The desired-products theory of injury does not open the courts to every party that wishes a product included different terms or features. At a minimum, the "change complained of has to itself create an injury in fact." *Id.* at 861 (Silberman, J., concurring). No change, no injury.

**IV**

In sum, despite several opportunities, Cage Ranch failed to produce evidence it suffered any concrete harm. Nothing in this decision should be construed as foreclosing a future petitioner from establishing injury based upon a loss of position in the interconnection queue. A petitioner may well do so if it offers evidence that it was concretely harmed by the loss. Because Cage Ranch failed to do this, however, we dismiss its petitions for review.

\*   \*   \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

---

*** The link in Cage Ranch's final supplemental brief to Southwest's interconnection queue study schedule shows only that Cage Ranch's project has been delayed. Cage Ranch's problem is that it has failed to show concrete harm stemming from that delay.

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk