# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 7, 2007        Decided February 5, 2008

No. 06-5278

JIM LEMON AND
ROBIN BISER,
APPELLANTS

v.

PETE GEREN, SECRETARY OF THE ARMY, ET AL.,
APPELLEES

Appeals from the United States District Court
for the District of Columbia
(No. 05cv00949)

*Scott M. Edson* argued the cause for appellants. With him on the briefs were *John H. Beisner* and *Mark S. Davies*.

*Alexander Hays, V.*, *pro hac vice*, argued the cause for *amici curiae* National Trust for Historic Preservation, et al. in support of appellant. On the brief were *Elizabeth S. Merritt* and *Aaron Colangelo*.

*Brian C. Baldrate*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Kevin K. Robitaille*, Assistant U.S. Attorney, entered

an appearance. *Lawrence P. Fletcher-Hill*, *Cristen S. Rose*, and *David H. Bamberger* joined in the brief for appellees.

Before: RANDOLPH, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*:  Plaintiffs live near and enjoy Fort Ritchie, a closed Army base in western Maryland described in our opinion in *Role Models America, Inc. v. White*, 317 F.3d 327, 330 (D.C. Cir. 2003).  The only issues on this appeal are whether, as the district court ruled, plaintiffs lack standing to pursue claims regarding the disposition of Fort Ritchie under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, and the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*, and whether the case became moot while the appeal was pending.

After Fort Ritchie was selected for closure, Washington County, Maryland became the local authority to plan the reuse and redevelopment of the fort.  In 1997, Washington County approved a comprehensive redevelopment plan calling for the creation of an office complex.  Maryland then established PenMar Development Corporation to serve as the new redevelopment authority to implement the plan.  *See* MD. CODE ANN., Art. 83A §§ 5-1201 to -1210 (West 1997).

In 1997, the Secretary of the Army entered into a Programmatic Agreement with PenMar, the Maryland Historical Trust, and the Federal Advisory Council on Historic Preservation to comply with the National Historic Preservation Act ("NHPA"). Section 106 of NHPA requires the Secretary, "prior to the approval of the expenditure of any Federal funds on the undertaking[,]. . . [to] take into account the effect of the

[transfer] on any district . . . that is included in or eligible for inclusion in the National Register," and to "afford the Advisory Council on Historic Preservation . . . a reasonable opportunity to comment" regarding the transfer. 16 U.S.C. § 470f. The Programmatic Agreement sought to minimize damage to the historic areas of the fort by requiring PenMar to develop Design Guidelines that would encumber future receivers of the property.

In 1998, the Secretary prepared, pursuant to the National Environmental Policy Act ("NEPA"), an environmental impact statement examining the environmental effects of different redevelopment options. NEPA requires an impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Significant circumstances occurring after the initial impact statement but before major federal action may require a supplemental impact statement. *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 371, 374 (1989) (noting that the preparation of supplemental environmental impact statements is sometimes necessary to comply with NEPA); *City of Olmstead Falls v. FAA*, 292 F.3d 261, 274 (D.C. Cir. 2002) (NEPA requires a supplemental environmental impact statement when "new information 'provides a *seriously* different picture of the environmental landscape.'" (quoting *Wisconsin v. Weinberger*, 745 F.2d 412, 418 (7th Cir. 1984) (emphasis in original))).

By 2004 PenMar had abandoned its original plan and had decided instead to sell Fort Ritchie to the Corporate Offices Properties Trust (COPT), a publicly-traded real estate investment trust. COPT proposed a new redevelopment plan that entailed more construction and commercial activity, including activity on historic grounds, than PenMar had proposed. In 2005, the Secretary of Housing and Urban Development approved the new plan. In 2006, the Army issued a Record of Environmental Consideration that called for no

further examination into the environmental or historical impact of the COPT plan.

Plaintiffs brought this action against the Secretary of the Army, PenMar, and COPT, alleging violations of NEPA and NHPA in the closure and redevelopment of Fort Ritchie. Among other things, their amended complaint alleged that the emergence of COPT's proposed redevelopment plan for Fort Ritchie created additional NHPA and NEPA obligations on the Secretary before the property could be conveyed. Plaintiffs sought declaratory and injunctive relief to prevent the Army's transfer of Fort Ritchie to PenMar.

The district court recognized that Article III of the Constitution requires plaintiffs to "demonstrate injury-in-fact (concrete and particularized, actual or imminent), caused by the defendant and capable of being redressed by a court order." *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 4 (D.C. Cir. 2005); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). With respect to plaintiffs' NEPA claim, the court held that they had not satisfied this test because the Army's preparation of a supplementary impact statement would not "force defendants to alter their allegedly injurious course of action here." *Lemon v. Harvey*, 448 F. Supp. 2d 97, 104 (D.D.C. 2006). We think the court misperceived the nature of plaintiffs' claim. The key word in the quotation from the district court's opinion is "force." Preparation of an environmental impact statement will never "force" an agency to change the course of action it proposes. The idea behind NEPA is that if the agency's eyes are open to the environmental consequences of its actions and if it considers options that entail less environmental damage, it may be persuaded to alter what it proposed. *See, e.g.*, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). Countless lawsuits in which this court and others upheld a plaintiff's standing were predicated on that understanding.

The plaintiffs in some of those cases had standing because they lived – as do the plaintiffs here – near where the federal action would occur and would feel the environmental effects of that action if it went forward. *Lujan*, 504 U.S. at 572-73 nn.7-8; *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1186 (D.C. Cir. 2007); *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003). Sometimes, the Article III injury in these types of cases is called a "procedural injury," the thought being that plaintiffs suffer harm from the agency's failure to follow NEPA's procedures, compliance with which might have changed the agency's mind for the reasons just given. *See City of Dania Beach, Fla.*, 485 F.3d at 1185; *Nat'l Parks Conservation Ass'n*, 414 F.3d at 4; *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 674-75 (D.C. Cir. 1996)(en banc). Whatever the label, it is clear that individuals in the same position as the plaintiffs in this case have standing to seek compliance with the impact statement requirement of NEPA. The Supreme Court recognizes as much, as do we. *Lujan*, 504 U.S. at 572-73 nn.7-8; *Nat'l Parks Conservation Ass'n*, 414 F.3d at 4-6; *City of Waukesha*, 320 F.3d at 235.

For similar reasons we believe plaintiffs had standing to pursue their claim under NHPA. The district court treated the claim as if plaintiffs were seeking to enforce a contract – the Programmatic Agreement – despite having no contractual rights under the agreement. We do not believe this is a correct view of plaintiffs' complaint. *Lemon*, 448 F. Supp. 2d at 105. As we have mentioned, § 106 of NHPA required the Secretary of the Army to "take into account" the effect of transferring Fort Ritchie on the area within the former base that is eligible for inclusion in the National Register of Historic Places – about one-third of the Fort. Plaintiffs' alleged injury is similar to that under NEPA – if the Secretary had taken into account the effect of the new COPT redevelopment plan he might have placed conditions on the transfer of the land to PenMar, conditions that

might have ameliorated what plaintiffs see as damage to an historic site they visit and enjoy. *See Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1294-95 (D.C. Cir. 2007); *Save Our Heritage, Inc. v. FAA*, 269 F.3d 49, 55-56 (1st Cir. 2001); *Pye v. United States*, 269 F.3d 459, 468 (4th Cir. 2001). Plaintiffs therefore had standing to pursue their NHPA claim.

The remaining question is whether, as the defendants contend, the case became moot when the Army recently completed the transfer of Fort Ritchie to PenMar, which immediately transferred the property to COPT. A case becomes moot when "intervening events make it impossible to grant the prevailing party effective relief." *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996). But all of the parties to the transaction are before the court. If unraveling the transfer is necessary after the district court decides the merits, it will be within the court's power to do so. *See Porter v. Lee*, 328 U.S. 246, 251 (1946); *Indus. Bank of Wash. v. Tobriner*, 405 F.2d 1321, 1323 (D.C. Cir. 1968). The case therefore is not moot.

The judgment of the district court dismissing the action for lack of standing is reversed and the case is remanded for further proceedings.

*So ordered.*